UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § | |
| v. | § § | |
| JACK MCQUESTION, | § § | CRIMINAL NO. A23-CR-064-RP |
| Defendant. | § § § § | |

### GOVERNMENT'S SENTENCING MEMORANDUM

This was not an awkward social interaction. This was an attempted abduction. It was the result of an obsession with an online personality with a "prolific online presence chronicling her prostitution career, her illicit drug use and advising others on how to prosper in the sex worker business." Def.'s Sent. Memo at 2. It was the culmination of months of meticulous planning. And it would have been successful but for the victim's alertness and decision to question Defendant's claim that he was an FBI agent with a warrant for her arrest. Accordingly, and pursuant to the plea agreement in this case, the government requests that the Court sentence Mr. McQuestion to 60 months imprisonment.

I.  THE ATTEMPTED ABDUCTION

On November 3, 2022, Defendant flew from Madison, Wisconsin to Austin, Texas in order to abduct Victim. After arriving in Austin, Defendant rented a car and checked into a hotel.

The next day, Defendant drove to Victim's house. He knew where to go because he had been to the house previously in August 2022. Defendant wore a black windbreaker similar to the windbreakers commonly worn by FBI agents. Defendant walked onto Victim's porch and knocked on her door:



Victim opened the door but did not open the screen door. Defendant claimed to be "law enforcement," removed fake FBI credentials from his back pocket and displayed them to Victim:



Defendant said, "I'm FBI Special Agent Harry Miller…Are you [Victim]? I'm sorry about this, I have a warrant for your arrest, you have to come with me…An arrest warrant."[1] Victim recalled asking what the warrant was for and being told it was for drugs and prostitution. Victim then said she would have to call local law enforcement to confirm the warrant, at which point Defendant fled the scene. The next day Defendant flew back to Wisconsin.

Victim alerted local law enforcement to what she later realized was an attempted abduction, who in turn later notified the FBI. The FBI investigated the case and were able to identify Defendant. When the FBI executed a search warrant at Defendant's residence in Wisconsin, they found:

- the fake FBI credentials,



---

[1] Victim's security video system captured some of the interactions between her and the Defendant, including the quoted statements by Defendant, but it was activated by motion and so did not capture the entire encounter nor the statements by Victim.

- a garrote (which is a wire, cord, or apparatus used to strangle someone) and fake glasses,[2]



- a windbreaker resembling those worn by FBI agents,

- a fake Wisconsin license plate,

- tape,

- pepper spray, and,

- jewelry and other mail that had been sent to Victim's residence but never received.

Agents also discover a list titled "Things to buy":

---

[2] The garrote and fake glasses were still in Amazon packaging and there were no signs the garrote had been used for cutting clay or wax or any other legitimate activity.

GOVERNMENT'S SENTENCING MEMORANDUM                                                          Page 4



The list included a "garrote," "FBI jacket," FBI badge," "Knife," and "Plates."

When Defendant was arrested at his parent's house in a nearby town in Wisconsin, they found in his possession a KBAR style knife, multiple fake Wisconsin license plates, and a roll of duct tape.

The investigation showed that Defendant had been attempting to locate Victim since at least November 2021. In November and December 2021, Defendant sent certified letters to Victim's prior residence in Washington. This is a method that people can use to learn someone's new address, because the sender of a certified letter will be notified of the new address to which the certified letter is ultimately delivered. Amazon records show that Defendant purchased the garrote on November 27, 2021, ten days after sending the first of two certified letters to Victim's prior residence. Defendant's financial records also show he made payments to White Pages,

Hooyu, and Spokeo, which are all internet sites that can be used to search for a person's address and other information.

The investigation also showed that Defendant had made a prior trip to Austin in August 2022. Based on the timing, agents believe Defendant traveled to Victim's residence during this trip and stole her mail because of the mail and jewelry that was recovered during the search of Defendant's residence.

## II.   ARGUMENT

The evidence establishes that Defendant intended to abduct Victim. In order to accomplish that goal, he first stalked Victim for at least a year and then impersonated a federal officer. The only reason one would impersonate a federal officer would be to overcome a target's natural resistance to going with the abductor.

Defendant's claims, unsupported by any evidence, that his "intent was to have [Victim] join him outside her house and interact with her" strains credulity and demonstrates a lack of acceptance of responsibility. Def.'s Sent. Memo. at n. 1. Nor is it believable that he "never intended to carry her away." *Id*. One does not travel thousands of miles, on two separate occasions, plan a packing list that includes a garrote, and impersonate an FBI agent with a fake badge and fictitious arrest warrant just to have a chat. It is not credible to believe that after making and executing that plan, as soon as Victim stepped out of her house Defendant was going to reveal that he was lying and did not in fact have an arrest warrant and just wanted to talk. Defendant clearly, by his actions, intended to abduct Victim on November 4. What, exactly, he planned to do with her after he abducted her, only the Defendant truly knows. But the items he possessed clearly indicate that it was not just pleasant conversation.[3]

---

[3] Defendant asserts that he could not have had the garrote with him in Austin because it was not detected by TSA. Def.'s Sent. Memo at n. 1. However, putting aside whether TSA would necessarily have detected the garrote,

Defendant's actions were terrifying for the victim in this case. Regardless of what activities she engages in online, she should not be subjected to stalking and kidnapping. Because of Defendant's actions, she will likely have to move residences again and will have to live with the uncertainty that any knock at the door could be another attempt to abduct her.

### III.   CONCLUSION

Sixty months imprisonment is a fair and reasonable sentence for Defendant. It reflects the seriousness of Defendant's crimes, provides for the safety and security of Victim from Defendant for at least that period of time, and will have a deterrent effect on anyone else considering a similar crime. It is not the harshest punishment that Defendant could have received for his crimes – if the government had charged him with attempted kidnapping, he would have a much higher maximum punishment – but it is the compromise worked out between the parties that Defendant is subject to up to 60 months in prison and in exchange the government has agreed not to bring other charges. Sixty months is well below the Guideline Range (87-96 months) and takes into account Defendant's lack of prior criminal record, possible mental health issues, and his guilty plea and legal acceptance of responsibility.

---

Defendant's flight records show that he paid for a checked bag when he flew to and from Austin in November 2022, thus any of his kidnapping materials could have been placed in his checked bag without risking discovery by TSA.

Probation is not an appropriate sentence in this case. The dangerous nature of the offense, the effect on the victim, the need to protect the victim in the future, and the need to deter similar conduct all weigh heavily against a probated sentence. The government therefore respectfully requests a sentence of 60 months imprisonment.

Respectfully submitted,

JAIME ESPARZA
United States Attorney

By:   */s/ Keith M. Henneke*
KEITH M. HENNEKE
Assistant United States Attorneys

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Government's Sentencing Memorandum has been delivered via the CM/ECF system on this day to counsel for the defendant.

/s/ Keith M. Henneke
KEITH M. HENNEKE
Assistant United States Attorney